CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
708 Third Avenue – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

| | | |
|---|---|---|
| RUKJAI PROMMASA, on behalf of herself and others similarly situated, | : | Case No.18CV10009 |
| | : | |
| Plaintiff, | : | FLSA COLLECTIVE |
| | : | ACTION and RULE |
| -against- | : | 23 CLASS ACTION |
| | : | COMPLAINT |
| MASA NY, LLC d/b/a MASA RESTAURANT and BAR MASA, MASAYOSHI TAKAYAMA, JOE IMPERATO, | : | |
| STEPHANIE ABANTO, and NICOLE CHEVALLIER, | : | **Jury Trial Demanded** |
| Defendants. | : | |

---------------------------------------------------------------------X

Plaintiff RUKJAI PROMMASA ("Plaintiff"), on behalf of herself and other similarly situated employees, by and through her undersigned attorneys, Cilenti & Cooper, PLLC, files this Complaint against defendants MASA NY, LLC d/b/a MASA RESTAURANT and BAR MASA ("MASA" or the "Restaurant"), MASAYOSHI TAKAYAMA, JOE IMPERATO, STEPHANIE ABANTO, and NICOLE CHEVALLIER (the "Individual Defendants") (MASA and the Individual Defendants are collectively referred to herein as "Defendants"), and states as follows:

### INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), she is entitled to recover from Defendants:

(a) unpaid minimum wages, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law, she is entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid "spread of hours" premiums for each day that Plaintiff's work shift exceeded ten (10) hours, (c) unpaid misappropriated tips, (d) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (e) prejudgment and post-judgment interest, and (f) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiff is a resident of Queens County, New York.

6.      Defendant MASA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business at 10 Columbus Circle, New York, New York 10019.

7.      At all relevant times, defendant MASAYOSHI TAKAYAMA has been the owner and Head Chef of MASA, as well as the operator, supervisor and managing agent of MASA. Defendant, MASAYOSHI TAKAYAMA, actively participates in the

2

day-to-day operation of MASA and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MASA.

8.     Defendant JOE IMPERATO is the Director of Human Resources at MASA and, as such, oversees and implements the Restaurant's policies as to hiring and firing of employees, setting employee work schedules, and the manner and method by which the employees' wages are paid. As Director of Human Resources, Mr. Imperato actively participates in the day-to-day operation of MASA and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MASA.

9.     Defendant STEPHANIE ABANTO is the Director of Operations and a Floor Manager at MASA and, as such, is a supervisor and managing agent of MASA. Ms. Abanto is responsible for the direct supervision and oversight of the Restaurant's employees, and participates in implementing the Restaurant's policies concerning the hiring and firing of employees, and setting the employees' work schedules. As such, Ms. Abanto actively participates in the day-to-day operation of MASA and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MASA.

10.    Defendant NICOLE CHEVALLIER is a Floor Manager and supervisor at MASA.  Ms. Chevallier is responsible for the direct supervision and oversight of the

Restaurant's employees, and participates in implementing the Restaurant's policies concerning the employees' work schedules. As such, Mr. Chevallier actively participates in the day-to-day operation of MASA and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MASA.

11.     The Individual Defendants each exercised control over the terms and conditions of Plaintiff's employment in that they have and have had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, and/or (v) create and maintain wage and hour records.

12.     The Individual Defendants are present on the premises of the Restaurant on a daily basis, actively supervise the work of the employees, and mandate that all issues concerning the employees' employment – including hours worked and pay received – be authorized and approved by them.

13.     Defendant, MASA, is an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

14.     Defendants employed Plaintiff to work as a non-exempt waitress for Defendants' high-end Japanese restaurant and bar, known as Masa and Bar Masa, from in or about June 2006 until on or about October 2, 2018.

4

15.     The work performed by Plaintiff was directly essential to the business operated by Defendants.

16.     Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

17.     Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned "spread of hours" premiums in direct contravention of the New York Labor Law.

18.     Defendants knowingly and willfully misappropriated from Plaintiff her lawfully earned tips in direct contravention of the New York Labor Law.

19.     Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

20.     Defendant MASAYOSHI TAKAYAMA hires employees to work as directors, managers and/or supervisors to participate in the day-to-day operation of the Restaurant.

21.     Defendant MASAYOSHI TAKAYAMA hired defendant JOE IMPERATO to work as the Director of Human Resources. Through authority granted to him by Mr. Takayama, Mr. Imperato has authority to and does hire and fire employees, set employee work schedules, and set employee rates of pay.

22.     Defendant MASAYOSHI TAKAYAMA hired defendant STEPHANIE ABANTO to work as the Director of Operations and as a Floor Manager at MASA. Through authority granted to her by Mr. Takayama, Ms. Abanto is responsible for the direct supervision and oversight of the Restaurant's employees, and participates in

implementing the Restaurant's policies concerning the hiring and firing of employees, and the setting of employee work schedules.

23.     Defendant MASAYOSHI TAKAYAMA hired defendant NICOLE CHEVALLIER to work as a Floor Manager and supervisor at MASA. Through authority granted to her by Mr. Takayama, Ms. Chevallier is responsible for the direct supervision and oversight of the Restaurant's employees, and participates in implementing the Restaurant's policies concerning the hiring and firing of employees, and the setting of employee work schedules.

24.     Defendant MASAYOSHI TAKAYAMA himself also actively participates in the day-to-day operation of MASA. For instance, Mr. Takayama is the Head Chef and personally works alongside the employees in the Restaurant, personally supervises and directs the work of the employees, instructs the employees how to perform their jobs, and corrects and/or reprimands the employees for errors made.

25.     Although defendant MASAYOSHI TAKAYAMA provides the other Individual Defendants with some authority to effectively run the day-to-day operation of the Restaurant, including the hiring and firing of employees, Mr. Takayama creates and implements all business policies and makes the final decisions concerning the hiring and firing of employees, the number of hours the employees work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

26.     In or about June 2006, Defendants hired Plaintiff to work as a non-exempt waitress.

6

27.     Neither at the time of Plaintiff's hire, nor at any time thereafter, did Defendants provide Plaintiff with a written wage notice that set forth her regular hourly rate of pay and any tip credits taken.

28.     Plaintiff worked continuously for Defendants in that capacity until on or about October 2, 2018.

29.     From the beginning of the six (6) year limitations period beginning in November 2012 and continuing through in or about December 2016, Plaintiff worked five (5) days per week, and her work shift consisted of six (6) hours on Monday from 4:30 p.m. until 10:30 p.m.; six (6) hours on Tuesday from 5:30 p.m. until 11:30 p.m.; and a split shift of eleven and one-half (11½) hours per day on Wednesday and Thursday from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 10:30 p.m.; and four (4) hours on Friday from 11:00 a.m. until 3:00 p.m.

30.     Beginning in or about January 2017 and continuing through the remainder of her employment on or about October 2, 2018, Plaintiff worked five (5) days per week, and her work shift consisted of six (6) hours on Monday from 4:30 p.m. until 10:30 p.m.; six (6) hours per day on Tuesday, Wednesday, and Friday from 5:30 p.m. until 11:30 p.m.; and a split shift of eleven and one-half (11½) hours on Thursday from 11:00 a.m. until 3:00 p.m., and 4:30 p.m. until 10:30 p.m.

31.     Throughout the entirety of her employment, Plaintiff was required to punch a time clock or other time-recording device at the beginning and end of her work daily work shift.

32.     Throughout the entirety of her employment, Plaintiff was not paid proper minimum wages. From the beginning of the six (6) year limitations period beginning in

November 2012 and continuing through in or about December 2015, Plaintiff was paid at the rate of $5 per hour, and worked thirty-six (36) hours per week (and sometimes in excess thereof).

33.     Beginning in or about January 2016 and continuing through in or about December 2016, Plaintiff was paid at the rate of $7.50 per hour, and worked thirty-six (36) hours per week (and sometimes in excess thereof).

34.     Beginning in or about January 2017 and continuing through in or about December 2017, Plaintiff was paid at the rate of $7.50 per hour, and worked thirty-four (34) hours per week (and sometimes in excess thereof).

35.     Beginning in or about January 2018 and continuing through the remainder of her employment on or about October 2, 2018, Plaintiff was paid at the rate of $8.65 per hour, and worked thirty-four (34) hours per week (and sometimes in excess thereof).

36.     Additionally, Defendants created a tip sharing/pooling arrangement for its tipped employees.  Defendants' tip sharing/pooling arrangement included a "point system," whereby each of Defendants' tipped employees received a percentage share of the evening tips received by customers.

37.     Not only did Defendants create the tip sharing/pooling arrangement, Defendants also monitored and retained the tip funds each evening, and distributed the tips at the end of each evening or week.

38.     As part of its tip pooling/sharing arrangement, Defendants unlawfully required its waiters/waitresses, runners, and busboys to share a portion of their tips with Defendants' Expeditor.

8

39.     The job of Defendants' Expeditor is to ensure food orders are cooked in a timely fashion so that all orders for a table are ready simultaneously and served while warm.

40.     Expeditors do not regularly and customarily receive tips as part of their job, and are not otherwise entitled to share the tips of a restaurant's food service workers or service employees.

41.     As part of its tip pooling/sharing arrangement, Defendants unlawfully required its tipped employees, including Plaintiff, to forfeit a portion of their tips to the benefit of Defendants' Expeditor.

42.     On average, Defendants' Expeditor received approximately $1,500 per week in tips, and sometimes in excess thereof, which otherwise belonged to Defendants' tipped employees. A portion of those tips legally belongs to Plaintiff.

43.     As a result of Defendants unlawful tip pooling/sharing arrangement, which deprived Defendants' tipped employees, including Plaintiff, of all of their rightful tips, Defendants are not entitled to take any "tip credits" under federal or state law. As such, Defendants were required to pay all of its tipped employees, including Plaintiff, at the full statutory minimum wage rate.

44.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiff and other similarly situated employees.

45.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff a "spread of hours" premium for each day that her work shift exceeded ten (10) hours in violation of the New York State Labor Law.

9

46.     Defendants knowingly and willfully operated their business with a policy of misappropriating Plaintiff's tips in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

47.     At all relevant times, upon information and belief, and during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

48.     Plaintiff brings this action individually and as class representative on behalf of herself and all other current and former non-exempt waiters/waitresses, busboys, and runners who have been or were employed by Defendants since October 30, 2015 through the date that the opt-in period closes as set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage (the "Collective Action Members").

49.     The collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

50.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

51.     This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

52.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

53.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

> a.     Whether Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c.    What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

d.    Whether Defendants failed to pay Plaintiff and the Collective Action Members statutory minimum wages;

e.    Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f.    Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated damages, interest, attorneys' fees, and costs and disbursements.

54.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

55.    Plaintiff and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

57.    Plaintiff brings her New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since October 30, 2012 until the entry of judgment in this case (the "Class Period") who were non-exempt tipped waiters/waitresses, busboys, and runners and who have not been paid statutory minimum

wages and/or had their tips misappropriated in violation of the New York Labor Law (the "Class").

58.     The persons in the Class identified herein are so numerous that joinder of all members is impracticable.  Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of Defendants, the Class consists of all non-managerial current and former tipped employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

59.     The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

60.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

61.     Plaintiff has committed herself to pursuing this action and has retained counsel experienced in employment law and class action litigation.

62.     Plaintiff will fairly and adequately protect the interests of the NY Class members.  Plaintiff understands that, as class representative, she assumes a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that she must consider the interests of the Class and Collective

Action Members just as she would represent and consider her own interests, and that she may not favor her own interests over those of the Class or Collective Action Members.

63.    Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members.   Plaintiff understands that in order to provide adequate representation, she must remain informed of litigation developments and that she may be called upon to testify in depositions and at trial.

64.    Plaintiff has the same interests in this matter as all other members of the Class and Plaintiff's claims are typical of the Class.

65.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

          a.   Whether Defendants employed Plaintiff and the Class members within the meaning of the New York Labor Law;

          b.   Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Class members;

          c.   What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

          d.   Whether Defendants failed to pay Plaintiff and the Class members statutory minimum wages;

          e.   Whether Defendants required Plaintiff and members of the Class to participate in an unlawful tip sharing/pooling arrangement, in

violation of the New York Labor Law and the regulations promulgated thereunder;

f.     Whether Defendants' violations of the New York Labor Law are willful as that terms is used within the context of the New York Labor Law; and,

g.     Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

66.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "65" of this Complaint as if fully set forth herein.

67.     At all relevant times, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

68.     At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

69.     At least within each of the three (3) most recent years from the date of this Complaint, defendant MASA has had gross revenues in excess of $500,000.

15

70.     Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and the Collective Action Members for hours worked.

71.     Defendants willfully failed to pay Plaintiff and the Collective Action Members minimum wages in the lawful amount for hours worked.

72.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action Members at the statutory minimum wage rate, when they knew or should have known such was due and that non-payment of minimum wages would financially injure Plaintiff and the Collective Action Members.

73.     As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

74.     Defendants failed to properly disclose or apprise Plaintiff and the Collective Action Members of their rights under the FLSA.

75.     As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages.

76.     Due to the reckless, willful and unlawful acts of the Defendants, Plaintiff and the Collective Action Members suffered damages in an amount not presently

ascertainable of unpaid minimum wages, an equal amount as liquidated damages, and prejudgment interest thereon.

77. Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

78. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "77" of this Complaint as if fully set forth herein.

79. At all relevant times, Defendants employed Plaintiff and the Class members within the meaning of New York Labor Law §§ 2 and 651.

80. Defendants knowingly and willfully violated the rights of Plaintiff and members of the Class by failing to pay them minimum wages in the lawful amount for hours worked.

81. Defendants knowingly and willfully violated the rights of Plaintiff and members of the Class by failing to pay "spread of hours" premium for each day their work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations § 146-1.6.

82. Defendants knowingly and willfully violated the rights of Plaintiff and members of the Class by misappropriating tips from Plaintiff and members of the Class by requiring them to participate in an unlawful tip sharing/pooling arrangement, in violation of the New York Labor Law and New York State Department of Labor Regulations §§ 146-2.14, 15, and 16.

83. Defendants failed to properly disclose or apprise Plaintiff and the Class members of their rights under the New York Labor Law.

84.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

85.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

86.    Defendants failed to notify Plaintiff and the Class members of their rates of pay, any tip credits or deductions taken, and their regularly designated payday, in contravention of New York Labor Law § 195(1).

87.    Due to the Defendants' New York Labor Law violations, Plaintiff and the Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid "spread of hours" premiums, unpaid misappropriated tips, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

88.    Plaintiff and the Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiff RUKJAI PROMMASA, on behalf of herself and all similarly situated Collective Action Members and Class members, respectfully requests that this Court grant the following relief:

(a)     An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)     An award of unpaid "spread of hours" premiums due under the New York Labor Law;

(c)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages pursuant to the FLSA;

(d)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages and "spread of hours" premiums pursuant to the New York Labor Law;

(e)     An award of unpaid misappropriated tips in violation of state law;

(f)     An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(g)     An award of prejudgment and post-judgment interest;

(h)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(i)     Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

trial by jury on all issues.

Dated: New York, New York
        October 30, 2018

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
708 Third Avenue – 6th Floor
New York, NY 10017
T.  (212) 209-3933
F.  (212) 209-7102

By:    _____

Giustino (Justin) Cilenti (GC2321)

**CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT**

I, _Rukjai Prommuse_, am an employee currently or

formerly employed by _Masa NY LLC_, and/or related

entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_10/9/_____, 2018

_Rukji Prommse_